UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES SISTRUNK, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO:   13-2983** |
| **DAKE CORPORATION, ET AL.** | **SECTION: "R" (4)** |

## ORDER

Before the Court is Defendants, Dake Corporation's and JSJ Corporation's (collectively "Defendants") **Motion for Discovery Sanctions (R. Docs. 53)** seeking a court order dismissing this action with prejudice pursuant to Federal Rule of Civil Procedure 37(b)(2). The motion is opposed. *See* R. Doc. 62. The motion was heard for oral argument on Wednesday, January 14, 2015.

### I.    Background

Plaintiffs James and Susan Sistrunk (collectively "Plaintiffs") sued the Defendants for the serious injuries Mr. Sistrunk suffered on January 23, 2012 while operating a 150 ton hydraulic press in the course of his employment with Pellerin Milnor. During the incident, Plaintiffs allege that Mr. Sistrunk was attempting to push a shaft through the housing of a hydraulic press when part of the shaft broke loose during the operation hitting him in the head, resulting in serious injuries to his head, neck, back, shoulders, as well as shock and injury to his psyche. *See* R. Doc. 1-1. On January 15, 2013, the Plaintiffs initiated this action against the Defendants, who are the manufacturer and designers of the hydraulic press that injured Mr. Sistrunk. *Id.* Plaintiffs allege defective design, manufacturer defect, and failure to warn. *Id.*

In the instant motion, Defendants seek sanctions dismissing the matter with prejudice because the Plaintiffs allegedly committed perjury. Defendants argue that in Mr. Sistrunk's written discovery and in Mr. Sistrunk's and Mrs. Sistrunk's depositions, they denied that certain

medical conditions predated the accident and asserted that the accident caused Mr. Sistrunk's conditions. Defendants argue that contrary to the Plaintiffs' testimonies, Mr. Sistrunk was extensively treated for spinal injuries and sexual dysfunction[1] before the accident and that their statements during discovery were perjury. Thus, Defendants now seek Rule 37 sanctions that dismiss this case with prejudice.

## II. Standard of Review

A federal court has the power to sanction a party who has abused the judicial process. The Court's power to sanction derives from two primary sources: (1) the Court's inherent authority and (2) Federal Rule of Civil Procedure ("Rule") 37. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 46, 50-51 (1991); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Rule 37 permits the trial court to issue any "just" orders when a party fails to comply with a prior discovery order. Such Orders can include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order

Fed. R. Civ. P. 37(b)(2)(A).

Furthermore, "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable attorney's fees,

---

[1] Sexual dysfunction is not a claim raised in the Plaintiffs' complaint. However, the Defendants represented during oral argument that the Plaintiffs discussed symptoms of sexual dysfunction in their depositions. Therefore the Defendants have rendered it a possible claim in this action.

2

caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

In considering the appropriate sanctions, "[t]he reviewing court may also consider whether the discovery violation prejudiced the opposing party's preparation for trial, and whether the client was blameless in the violation." *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003); *International Transport Workers Federation v. Mi-Das Line SA*, No. 13-454, 2013 WL 1403329, at *8 (E.D. La. Apr. 4, 2013). Additionally, the Fifth Circuit requires the imposition of "the least onerous sanction which will address the offensive conduct." *Gonzalez v. Trinity Marine Grp., Inc.*, 117 F.3d 894, 899 (5th Cir. 1997).

A sanction that dismisses a case with prejudice "'is an extreme sanction that deprives a litigant of the opportunity to pursue his claim.'" *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir.1995)). The sanction of dismissal is only appropriate when "(1) there is 'a clear record of delay or contumacious conduct by the plaintiff,' and (2) 'lesser sanctions would not serve the best interests of justice.'" *Id.* (quoting *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir. 1985)). Furthermore, "dismissal with prejudice [is] a more appropriate sanction when the objectionable conduct is that of the client, and not the attorney." *Id.* (citing *Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 749 (5th Cir. 1987)).

### III. Analysis

#### A. The Alleged Perjury

Defendants argue that the Plaintiffs denied the pre-existence of Mr. Sistrunk's spinal injury and sexual dysfunction. *See* R. Doc. 53, at 2. Defendants specifically allege that the Plaintiffs committed perjury in Mr. Sistrunk's answers to interrogatories, Mr. Sistrunk's

3

deposition, and Mrs. Sistrunk's deposition. Defendants contend that Mrs. Sistrunk was in concert with her husband to increase recoverable damages, which is why she testified that the two allegedly preexisting conditions did not exist prior to the accident. *See* R. Doc. 53-3, at 2. Defendants further argue that they have medical records that reveal that these two conditions predated the accident in question. *Id.*

Defendants argue that Mr. Sistrunk's answers to the Defendants' interrogatories do not disclose relevant treatment:

> **Interrogatory No. 5:** Describe the personal injuries, if any, allegedly sustained by you as a result of the alleged negligent acts or omissions described in your Complaint.
>
> **Answer to Interrogatory No. 5:** Plaintiff sustained injury to his shoulder requiring surgical intervention, as well as damage to the intervertebral bodies in his lumbar spine and neck. In addition, plaintiff sustained lacerations to his head requiring 4 staples, a laceration to his left check requiring multiple stitches, facial nerve damage, and a fracture of his right foot.
>
> **Interrogatory No. 11:** Had you suffered any personal injury, illness, disease or condition within five (5) years prior to the date of the acts and/or omissions described in your Complaint? If so, state the injury, condition or illness; when you were first diagnosed with each such injury, condition or illness; by whom you were diagnosed with each such injury, condition, or illness; and state the name and address of each physician or other health care professional, hospital and/or clinic rendering your treatment for each injury, condition or illness.
>
> **Answer to Interrogatory No. 11:** Prior to the accident which is the subject of this litigation, plaintiff suffered from PTSD, resulting from having witnessed a co-worker killed in a work related accident.
>
> Plaintiff also suffers from Acid Reflux, which is managed with medication.
>
> Plaintiff's primary care physician is:
> Brandi K. Jones, M.D.
> Ochsner Clinic
> 2120 Driftwood Blvd.
> Kenner LA 70065
>
> *See* R. Doc. 53-6, at 3-4 and 8-9.

Defendants additionally argue that during Mr. Sistrunk's deposition he testified that he suffered injuries to his neck and back as a result of the accident, but denied any prior history or treatment of these conditions:

> **Q:** Prior to your accident did you have any ongoing medical conditions or health problems?
> **A:** I had reflux and I took the heart pill, you know.
> **Q:** And that's it?
> **A:** Yeah, that's about it.
> **Q:** Okay.
> **A:** That's all I know of.
> **Q:** Sure. Did you have any mental or emotional health problems that you're aware of prior to the accident?
> **A:** I had anxiety – anxiety problems –
> **Q:** Ok
> **A:** --you know.
> **Q:** Sure.
> **A:** Not – Nothing that I needed to go to a shrink or anything to talk about.
> **Q:** Did you take any medication for any anxiety problems prior to the accident?
> **A:** Sometimes I did.
> **Q:** Okay. Anything else that you would take for anxiety?
> **A:** No. She had gave – My primary care doctor had gave me some pills, but I cut them out a long time ago.
> **Q:** All right. So have we covered then any medical, mental, or emotional health problems that existed as of the date of the accident prior to the date of the accident?
> **A:** Yeah – that's – *there were none*.

*See* R. Doc 53-8 (James Sistrunk Dep. 136:24-138:6, July 1, 2014) (emphasis in original).

Defendants further argue that Mrs. Sistrunk also denied in her deposition the pre-existence of highly relevant medical conditions suffered by her husband:

> **Q:** Prior to the incident on January 23, 2012, did your husband ever have any complaints of back or neck pain?
> **A:** No, not – I mean, he had the occasional "I slept wrong," you know, kind of stuff, but nothing that kept him from doing anything or going to work or, you know, nothing like that.

*See* R. Doc. 53-9 (Susan Sistrunk Dep. 17:12-17:22, December 2, 2014).

> **Q:** In what ways has the subject incident and the injuries stemming therefrom affected your relationship with your husband?

**A:** We're not intimate because of all the medication he's on.

*See* R. Doc. 53-9 (Susan Sistrunk Dep. 23:12-23:23, December 2, 2014).

**Q:** Had Mr. Sistrunk ever treated for sexual dysfunction prior to the date of the accident?
**A:** Can you be more specific? I mean I don't know what you're actually asking me.
**Q:** I'm sorry. Did Mr. Sistrunk ever suffer from erectile dysfunction?
**A:** No.
**Q:** Did he ever treat with a medical provider for – I'm not sure what the formal term is, but a low libido?
**A:** No.
**Q:** Did he ever suffer from either of those conditions prior to the incident, whether erectile dysfunction or low libido, to you knowledge?
**A:** To my knowledge, no.

*See* R. Doc. 53-9 (Susan Sistrunk Dep. 23:12-23:23, December 2, 2014).

Defendants argue that contrary to the deposition of the Plaintiffs, they have medical records from Dr. Brandi K. Jones of Alton Ochsner Medical Foundation indicating that Mr. Sistrunk received treatment for his spinal condition from 2006 to 2008. *See* R. Doc. 53-3, at 7. Defendants represent that Mr. Sistrunk's medical records indicate that he informed his physician that he had constant neck issues since he broke his collarbone in 1987. *Id.* Defendants contend that the records indicate that Mr. Sistrunk suffered from arthritis and a bone spur in his neck and underwent imaging in 2006 that revealed degenerative changes in his spine. *Id.*

Defendants argue that in 2007 Mr. Sistrunk had to seek out emergency treatment for his spinal issues and underwent physical therapy as a result of his degenerative spinal condition. *Id.* In 2008, Defendants contend that Mr. Sistrunk underwent further testing and treatment for his spine, which was characterized by the physician as an "extensive evaluation." *Id.* at 8. Defendants argue that Mr. Sistrunk and his wife did not disclose his spinal injury despite undergoing treatment for a period of years and despite being squarely and directly asked to identify his treatment. *Id.*

Further, Defendants argue that in addition to concealing his spinal injury, Mr. Sistrunk also had complaints of sexual dysfunction that dates back to 2004 and continued through 2010. *Id.* Defendants contend that the Plaintiff underwent several different courses of medical treatment to address his condition prior to the accident, but identified it as a condition that was caused by the accident.

### B. Appropriateness of Sanctions

Defendants argue that the sanction of dismissal with prejudice is appropriate because Plaintiff's deceit in committing perjury has been substantial, deliberate, and goes to the heart of the case. *See* R. Doc. 53-3, at 18. Defendants compare this case to the Fifth Circuit's decision in *Brown v. Oil States Skagit Smatco*, the First Circuit's decision in *Hull v. Municipality of San Juan*, 356 F.3d 98, 99 (1st Cir. 2004), and the District Court for the Northern District of Illinois's decision in *Dotson v. Bravo,* 202 F.R.D. 559 (N.D. Ill. 2001). *Id.* at 16. Defendants contend that *Brown*, *Hull*, and *Dotson* demonstrate that when a plaintiff commits perjury, dismissal of the case with prejudice is an appropriate sanction to deter falsities by litigants. *Id.* at 16-18. Defendants further argue that a lesser sanction would not be sufficient in this action because the Plaintiff would not be able to satisfy a monetary sanction and an adverse inference instruction at trial would have a mild effect if the Plaintiffs are nimble on cross-examination. *Id.* at 18.

In opposition, the Plaintiffs contend that perjury requires that the testimony at issue be both demonstrably false and interposed with a willful intent to provide false testimony. *See* R. Doc. 62, at 2. Plaintiffs argue that in determining perjury, the specificity of the question is crucial to determine the validity of the answer regarding whether or not perjury was committed. *Id.* at 3. Plaintiffs argue that the Defendants' questions during the depositions were vague. Plaintiffs contend that their responses were accurate and responsive to the Defendants' vague questions

7

because the Defendants failed to reference time or specific injuries. *Id.* at 4. Plaintiffs argue that if the Defendants wanted more precise answers, they should have asked more precise questions or asked followed up questions. *Id.*

Plaintiffs further argue that the Defendants' representation that they denied the existence of Mr. Sistrunk's conditions is a mischaracterization. *Id.* at 8. Plaintiffs argue that the Defendants' motion fails to identify exactly where in the testimony the Plaintiffs denied the preexistence of the conditions. *Id.* Plaintiffs contend that the preexisting injuries the Defendants reference are based on treatments Mr. Sistrunk received six to eight years prior to his deposition and four to six years prior to the incident. *Id.* at 5.

After considering the parties' submissions, their arguments during the hearing, and the applicable case law, the Court concludes that sanctions are not appropriate in this action. Furthermore, the three cases cited by the Defendants are each distinguishable from this case.

In *Brown*, the plaintiff filed a Title VII racial harassment and constructive discharge claim against his employer. 664 F.3d 71. The plaintiff claimed that he quit his job because of the racial harassment he had to endure. *Id.* at 73-74. However, in an earlier lawsuit for injuries the plaintiff sustained in an automobile accident, he alleged that he quit his job due to his injuries. *Id.* at 74.  In *Hull*, the plaintiff had brought suit against the defendant for injuries he allegedly sustained from a slip and fall. 356 F.3d 98. During discovery, it was uncovered that the plaintiff sustained many of the same injuries from two prior accidents, despite the plaintiff not disclosing the previous accidents and the injuries when specifically asked for the information during his deposition. *Id.* at 100. In *Dotson*, the plaintiff had actively concealed his identity by using a false name in filing his action with the court and had a history of providing the same false name to law enforcement. Id. at 562.

The facts in *Brown*, *Hull*, and *Dotson* each represent unequivocal perjury and falsehoods. The plaintiffs in those actions had two unmistakably conflicting testimonies or facts that demonstrated their intent to deceive. In the case at bar, the Plaintiffs did not give unmistakably conflicting testimony. The defendants in *Brown* and *Hull* specifically asked the plaintiffs about the topics that were the subject of the sanctions. Here, the Defendants did not specifically ask if the Mr. Sistrunk had a previous spinal injury or sexual dysfunction disorder. All of the questions at issue were broad, vague, ambiguous, and allowed for reasonable variations in interpretation.

The Defendants claim the Plaintiffs "denied" the preexisting conditions, but the record does not reflect such. For example, the Defendants asked Mr. Sistrunk if "[p]rior to [his] accident did [he] have any ongoing medical conditions or health problems?" Mr. Sistrunk answered that he had reflux and anxiety. Mr. Sistrunk never denied he did not have a spinal injury from 1987 nor did he deny seeing his physician for sexual dysfunction. An unequivocal denial and falsehood would require the Defendants to specifically and pointedly asked Mr. Sistrunk if he had a prior spinal condition or sexual dysfunction, which they did not. The facts in this case are not sufficient to warrant the severity of the sanction of dismissal or any lesser sanction.

Therefore,

**IT IS ORDERED** that Defendants, Dake Corporation's and JSJ Corporation's (collectively "Defendants") **Motion for Discovery Sanctions (R. Docs. 53)** is **DENIED**.

New Orleans, Louisiana, this 2nd day of February 2015.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**